Next on the calendar is Anabi v. NYU Good morning, Your Honors. If it may please the Court, Pro Se, Kareem Anabi. Honorable Chief Justice Roberts has written something to the effect of that the judiciary should endeavor to achieve 100% conformity with USC 455, where if impartiality can be questioned on behalf of a judge, he should recuse. In this case, Honorable Judge Lehman should have never adjudicated my case. He has written publicly that he is deeply indebted to donors that finance and promote his center and his family's name. In my case, donors, the Rennert family, NYU administrators such as Martin Lipton, and NYU itself have financed and promoted his family's legacy. His uncle has a center at NYU, a lecture in his name. His wife has received millions of dollars from the Rennert family when she was in charge of fundraising at Barnard. The judge's cousin has received a scholarship from the Rennert at NYU. I can go on and on, and this is listed in my brief. Did you raise this issue in the district court? Ordinarily, we are limited in our review to issues already raised. Has this been raised in the district court? I looked into his relationship with NYU and these donors after his decision was handed out because I thought there must be something going on that is not. So it was not brought in the district court? It was not known, the relationship, until after the judgment was handed out, the final judgment. Thank you. And I think his responsibility to recuse because of potential bias is proven in his decision. I have a few examples, but with my brief time, I'd like to cite the most dangerous to society if his decision is allowed to, if the precedent he set is allowed to stand. He's decided that alumni benefits are gratuitous promises. This court and others have consistently held that students have an applied contract with universities if the promise or benefit is specific enough. So how does that – I mean, the difference between a student and an alumni, if you could explain why you think that's – it sounds to me like you think they're the same. Why don't you imagine why they might be different? Well, it's actually worse for students or prospective students because they can be sold a bill of goods to attend the university. A university can promise them season-nick tickets as alumni and then not deliver on that. And they'll be making a huge financial decision, a life altering, to attend that university and then not get what they paid for. As alumni. As a student, as a prospective student, making that decision to go to university A or university B. And then as alumni, people have paid hundreds of thousands of dollars and a lot of people are in debt to get services that they thought were part of their – the service that they paid for. And then the rug is pulled out from underneath them. And are there limits to that? Are there limits to how much an alumni can expect assistance from their alma mater? Well, I don't see it as assistance. I see it as whatever is on offer should be allowed, alumni, without the university being able to tell people unilaterally, you cannot participate in these and you have no contractual right to them because you didn't pay for them. NYU, by definition, requires people to pay 13 – for 13 credits to become alumni. So they're not gratuitous. Someone can't walk into – from the street and sign up freely for these alumni benefits. There is a payment that has to be made. And the courts have consistently held there's an applied contract for benefits that are specific enough. Now, the – Judge Lehman, to avoid creating a contract – Can you tell me the specific contracts you're arguing were breached and where we can find them in the record? Sure. The second amended complaint has several pages of the specific alumni promises. The judge initially said that there is a time of discrepancy between the payments and the promises, only looking at the promises from the Challenge Startup Contest Startup Advising that I used in 2021, which is an inference in favor of NYU because, as I stated in the complaint, these alumni benefits were in operation at the time I was a student paying NYU. So he was making inferences in favor of NYU to protect them from there having been a contract with me. When, in the revised complaint, I addressed the time of discrepancy by presenting factual allegations of these promises dating back to when I was a student, he moves the goalpost and says, you did not allege that you paid NYU or relied on these promises. Okay. So we will give you three minutes, Mr. Anabi, on rebuttal. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Poonam Sethi and I represent defendant Apelli NYU in this matter. Here, Mr. Anabi's arguments are clear that he's relying on speculation and conspiracy theories. And what happens if he could plausibly allege significant disparities between the gender breakdown of the competition applicants and the gender breakdown of the winners? Would that state a plausible discrimination claim? Well, he doesn't allege it here, but I'm asking if he could. If he could plausibly allege that, would that state enough? Well, theoretically, if Mr. Anabi was able to show a statistic differential where he could adequately plead that he was similarly situated to the winners of various competitions, whether it's a hackathon or a challenge, but he has failed to do so. Okay. So he has. I mean, he is pro se. So can you tell me what your best argument for why amendment would be futile? Well, the Second Circuit has routinely recommended that a pro se plaintiff should be given at least one leave to amend before there's prejudice, which that has been the case. He has amended his complaint. Right. But he didn't have a chance after it was dismissed. Right? And that's the point, because as a pro se, he doesn't know the force or the lack of force of the legal argument. Your Honor, that's actually incorrect. There was a prior motion to dismiss for the First Amendment complaint. And in that, Judge Lyman issued a 54-page decision. And after that decision, there was the Second Amendment complaint. So the First Amendment complaint had 125 allegations. It was 155 pages with exhibits. And then the Second Amendment complaint was to address the deficiencies that were articulated in the first order to dismiss. And in that, in those 380 allegations, Mr. Inouye was still unable to adequately plead. So there's been three iterations of the complaint and two fully brief motions to dismiss. And this is the second decision that dismissed the claims with prejudice after the third iteration. Okay. So just to reiterate, because Judge Lyman has issued two decisions that detailed the deficiencies of each of Mr. Inouye's allegations, the Court here, even on a de novo review, should dismiss the Second Amendment complaint with prejudice. Plaintiff has failed to comply with the fairest and minimum requirements for his brief and has failed to adequately cite to the record and has not even explicitly addressed various claims that are in the Second Amendment complaint within that brief. And so those claims should be considered deemed abandoned and waived, specifically the claims regarding retaliation premised on any Federal or State statute, the breach of contract claims premised on NYU's policies or the hackathon, breach of implied covenant of good faith and fair dealings, any allegations premised on the Communication Act of 1934, the New York Civil Rights Law, Section 40, and the State Human Rights Law. Even on the merits, Mr. Inouye's brief offers a hodgepodge of irrelevant information and conclusory allegations that are premised on his speculation and subjective belief that he has articulated the elements of his claim. After three iterations of the complaint with over those 380 allegations in the Second Amendment complaint, Mr. Inouye cannot meet the fair elements of his various claims, specifically with the discrimination complaint claims in violation of State and Federal statute. These statistics cited are insufficient to show that Mr. Inouye was similarly situated to those selected in those various competitions, and his conclusory and unsubstantiated allegations offer no specific conduct that show discriminatory intent or conduct. With respect to the breach of contract, it is clear that withholding alumni benefits is gratuitous, and in Sheffs v. Columbia, the Court was specific to state that alumni benefits are not a guarantee of unlimited or irrevocable access of benefits. With respect to the challenge, there is no breach, and Mr. Inouye was allowed to enter the competition, and the comments were clear that he was not selected based on the merits of his application. With respect to the general business law section 349 and 350, Mr. Inouye has not alleged any deceptive practice or false advertising that threaten the public interest. The cited comments that he's relying on are general puffery and only offer speculative harm based on his enrollment from 1999 to 2010 as a student at NYU. As is clear by Mr. Inouye's argument, there is no reason to disqualify Judge Langen, and his dissatisfaction with the decision is not a basis for him to refuse. NYU further reiterates that any further amendment would be futile. He's had three iterations of the complaint, and as is clear in the various cases cited in the appellant's brief, the Second Circuit allows for one leave to amend without prejudice, which has already been done here. So if the court has no additional questions, NYU thanks the court for its time and requests that the dismissal of the Second Amendment complaint be affirmed with prejudice. Do you work directly for NYU or with the law firm? The law firm. So, Mr. Inouye, I'm going to hold you to your three minutes. I'm hoping that you can tell me that if you were given the ability to amend your complaint, what other information would you allege with respect to discrimination? In legal terms, that's why it would not be futile. Well, I believe what I've alleged already perfectly supports valid claims. This has been framed around, she has framed it as the disparate examples are against other winners. I'm not even seeking to be compared to other winners. I'm seeking to simply participate in these programs, to be compared to other participants. The judge clearly here in the Second Amendment complaint says I only refer to one other example as disparate treatment. I clearly stated in the SAC a minimum of 15 individuals and 11 ventures are examples of disparate treatment for discrimination in the challenge, yet inexplicably the court picks up only one carryover example from the previous complaint. So it seems like no matter what I do to address the judge's requirements, it's still not sufficient. Like I said, he's moving the goalposts. Just one other thing in my brief time that's dangerous to the public and this precedent that he set, the number of winners in the 2001-2022 challenge contest is clearly written as 25 to 35 winners to be selected. There are no disclaimers to say less. It's not mentioned anywhere else to say that maybe, you know, 15 were mentioned in another part of the website. This is the only place on a main page on the contest website that says the number of winners. If this is not a term of the contest, then what is? Hundreds of participants paid $25 to $100 to be given the opportunity to be one of the minimum 25 winners and only 20 winners were selected. If this decision is allowed to stand, it opens a tidal wave of potential consumer fraud in paid contests. I can run a contest tomorrow saying I'm going to select 100 winners. Everybody pay me $100 and then select five winners and then say it's loose language. A number by definition is not loose language. So allowing that to stand, I think, would cause a danger to society. They mentioned the case of Chavez versus Columbia. I read about this case and Chavez requested unlimited, as she said, access to campus. I'm not asking to be on campus anytime I want. But if there's an alumni event, because I've paid NYU for a service that promised alumni benefits and these benefits are still being provided to others, first it raises the question of why am I being discriminated against for not attending these alumni events or participating in these even virtual alumni programs. And second, I contractually have the right to do that as long as I haven't been accused of any wrongdoing. And there isn't a single instance where NYU has stated I've done anything wrong to deserve being banned. So, and I think the judge also harms civil rights potential cases in the future because he requires specificity at the apparel level in comparing two entrepreneurs who are discriminated against. So, one other startup. Thank you. Thank you very much for your time. Okay.